### HOME MUTUAL INSURANCE COMPANY vs. HAMILTON R. GAMBLE.

1. The law applicable to the Home Mutual Insurance Company, does not permit an execution to issue against them, until three months after judgment. If, within this period, execution be issued, it will not defeat a garnishment upon them, and the recognition and payment of the execution subsequent to the garnishment, will make no difference.

## APPEAL from St. Louis Court of Common Pleas.

CROCKETT & KASSON, for appellants.

The negative on this question is maintained for following reasons:

I. Because the garnishment of the defendant in execution, affords no justification to the sheriff for failing or neglecting to serve the execution. He cannot officially take notice of the garnishment, or, in any respect, recognize it as a solid defence to the execution.

II. If this be so, the defendant in execution, in order to avoid the hazard of paying the debt twice, will be compelled to file a bill, enjoining the execution, and compelling the parties to interplead, so as to ascertain who is entitled to the fund. This proceeding puts upon the defendant in execution, the necessity of giving bond and security to the plaintiffs in execution, in a litigation in which the defendant has no interest. If he is unable to give the bond, the sheriff proceeds to collect the execution, and he will afterwards be compelled to pay the debt again under the garnishment. This, we maintain, involves a hardship upon the defendant, which the law will not tolerate.

III. The 62 and 63 sections of the statute, authorizing a stay of execution improperly issued, does not and was not intended to apply to such a case as this; but only to cases where the executions are wrongfully or improperly issued. But if, in such a case, the court would order a stay of execution, it could only be done upon the defendants giving bond and security as provided by the sections above quoted.

This involves the same hardship upon the defendant as above stated. If he be unable to give the bond, he must pay the defendant twice.

IV. If the garnishment be valid in a case where both the execution and the garnishment issued from the same court, it must be equally valid where they issued from different courts. In such a case, it would involve a conflict of jurisdiction, which would result in the greatest inconvenience in practice. It is a well settled principle, that the court first obtains jurisdiction over the fund, has the right to perfect its judgment by execution. This right would b

Home Mutual Insurance Company vs. Gamble.

defeated, and the most embarrassing collisions arise, if another court could interpose a garnishment and arrest the process of execution before it was finally consummated. On this point, see Wallace vs. McConnell; 13 Peters 151; Marvin vs. Hawley et al., 9 Mo. R. 382; Curling vs. Hyde, 10 Mo. R. 374.

V. That the execution and garnishment both issued from the same court, can make no difference: because, the garnishment is a statutory remedy entirely. If it exists in any case it is only by force of the statute, and the statute is general, and does not discriminate between processes issued from different courts. It does not provide that it shall be valid in any given case when issued from a particular court, when it would not be equally valid if issued from another court.

VI. The statute ("Executions" § 16,) makes the execution a lien on personal property of the debtor, from the time it is placed in the sheriff's hands. Witnesses, sheriff, clerk and court, are all concerned in the judgment, and levy upon the defendant in execution. If the process of garnishment touches any part of the fund, it restricts the whole. The debtor may retain $5,000 in his hands, being garnisheed, without paying interest for years, while the question upon the suit of garnishment is being adjusted. The reasoning of the court in Marvin vs. Hawley is very conclusive upon the question of policy.

The principle claimed by the defendant in error will operate as a most serious and unjust hardship in practice, which could not have been contemplated by legislature in passing the act.

GAMBLE, for appellee.

The only question for the court is, whether or not the issuing of execution on the judgment in favor of Paynter against the insurance company can protect the debt due from the company to Paynter, against Gamble's attachment.

I say this is the only question, because, surely, the voluntary payment by the garnishee, in July, cannot discharge him, if he were rightly attached in April. See 12 Mo. R., 578, Curle & Goddin vs. Perpet. Ins. Co.

The statute gives the attachment, generally, against all debtors of the defendant in execution. See R. C., tit. "executions," sec. 6. And, surely, it is no less a debt after the issuing of execution than it was before.

The garnishee was in no danger of a double payment, as his counsel seem to suppose, for a judge might stay the execution, for any good cause: R. C., "executions," sec. 62.

An attachment, to answer an execution against his creditor, is a good cause. It would be a good plea before judgment, and a good cause to stay execution after judgment.

Paynter's execution was not levied upon any property, nor the money collected by any coercive measures. The company paid it voluntarily, and, for aught that appears to the contrary, by collusion, and with indemnity; for the answer reveals only the fact that it was satisfied, by payment to the sheriff, on the 17th of July.

Paynter's execution was no lien on any thing that we have touched; but if it were a lien, that would be no answer. Suppose the debt from the company, to Paynter, secured by a deed of trust on land, (a very potent lien) would the lien-security protect the debt from attachment?

Paynter's execution was irregular and void; for no execution could issue till three months after judgment. See the charter, sec. 10, last clause tuel acts of '45, p. 201.

This clause is not, as suggested by counsel, a mere privilege of the company, to be claimed or varied, at pleasure; but it presents, also, the question of power in the court, to issue the writ, and of right, in all other persons whose interests might be affected by issuing and enforcing the writ with unlawful haste.

The proof of collusion, between Paynter and the company, is very strong. The company

Jones vs. State of Missouri.

of course, knew its own charter, knew that execution could not be issued till the end of three months, knew that Paynter's judgment was of the 14th of March, (the answer says so) and that execution had been issued upon it before the 19th of April, when the attachment was served. And yet the company, without an effort to disembarrass itself of the two claims voluntarily paid the money, before the return day of the attachment. This amounts almost to proof positive of collusion.

BIRCH, J., delivered the opinion of the court.

Gamble having an execution against one Paynter, garnisheed the Home Mutual Insurance Company. At the time of the garnishment, Paynter had an unsatisfied judgment against the company for a sum greater than he owed Gamble. Upon this judgment he had also taken out execution, but it appears by a section of the law applicable to that company, that executions cannot issue against them for three months after judgment, and that that period had not intervened. The whole question, therefore, was and is, was Gamble entitled to the benefit of the open legal diligence disclosed in running his garnishee, or could it be defeated by the procurement and recognition of an immature and illegal execution, which was discharged subsequent to the garnishment? The law would indeed be but too justly subject to the reproach of being a farce, could its principles and provision be thus evaded or trifled with, wherefore, the judgment of the court of common pleas, which very properly held the company liable for the amount of Gamble's debt, when it could, so easily have had the pretended execution quashed, is in all things affirmed.